STATE OF MAINE                          UNIFIED CRIMINAL COURT
KENNEBEC, ss                            CRIMINAL ACTION
                                        DOCKET NO. CR-21-1970


STATE OF MAINE

v.                                      ORDER ON DEFENDANT'S
                                        MOTION TO SUPPRESS
TOBY BLODGETT,

        Defendant


Hearing on defendant's motion to suppress was held on July 14, 2022. The State was represented by Assistant District Attorney Katherine Davis from the Penobscot County District Attorney's office. Defendant, Toby Blodgett, was not present, but was represented by Walter F. McKee, Esquire. The court received testimony from Jacob Pierce, a sergeant with the Skowhegan Police Department, and Taylor Rolfe, a registered nurse at Redington-Fairview General Hospital in Skowhegan.

The defendant argues that no warrant was obtained prior to defendant's blood draw at the hospital on July 24, 2021, and no exceptions to the warrant requirement apply. He asks the court to suppress the blood samples and corresponding test results. Based on the evidence received, the court makes the following findings of facts and conclusions of law.

On July 24, 2021, Toby Blodgett, an off-duty Somerset County Sheriff's deputy, was involved in a serious motor vehicle crash. He was taken to Redington-Fairview General Hospital in Skowhegan due to his significant injuries. Defendant arrived at Redington-Fairview General Hospital at

1

approximately 7:17 pm. Defendant was reporting a high level of pain and hospital staff administered medication to address his pain, including fentanyl on at least two occasions in the first hour that he was at the hospital (and prior to the blood draw). Due to his injuries, defendant was transferred to Maine Medical Center in Portland later that night.

Shortly after 7:00 pm, Sergeant Jacob Pierce, a patrol supervisor with the Skowhegan Police Department, was called to Redington-Fairview Hospital to assist Officer Cummings. Officer Cummings informed Sgt. Pierce that defendant had been involved in a motor vehicle accident and was seriously injured. The passenger in defendant's vehicle was also injured and both individuals had been transported to the hospital for treatment. Family members and friends of both patients were beginning to gather at the hospital.

Arriving at the hospital, Sgt. Pierce observed numerous law enforcement officers from various agencies, as well as defendant's wife Shanna and his brother Ronnie, both of whom were law enforcement officers as well. Sgt. Pierce was approached by Trooper Lacoste from the Maine State Police seeking a blood kit as the deputy conducting the investigation into the crash did not have one. Sgt. Pierce retrieved a law enforcement issue blood kit from his vehicle. When he returned, Trooper Lacoste was not present and Sgt. Pierce was requested to collect a blood sample from defendant.

Sgt. Pierce waited for permission from medical staff to enter the emergency room where defendant was. Once in the room, Sgt. Pierce observed defendant in the hospital bed covered in blood and bandages (including on his

2

hands and facial area) due to his significant injuries. Defendant's wife and brother were present in the room, as well as medical staff. Sgt. Pierce asked defendant's brother to step out of the room so that he could speak with defendant. His wife and several medical professionals remained in the room while Sgt. Pierce spoke with defendant.

Sgt. Pierce explained to defendant that, due to the severity of the crash, he was there to complete a blood test kit at the request of Maine State Police, through the Kennebec County Sheriff's Office. After this statement, defendant nodded his head up and down. Sgt. Pierce took defendant's head movement to indicate he understood that Sgt. Pierce needed to do the blood kit. Sgt. Pierce did not recall whether defendant had verbally addressed him or spoken with any of his family members or medical staff while the officer was present in the room. At hearing, Sgt. Pierce could not recall whether he affirmatively asked defendant if he consented to the blood draw. Sgt. Pierce only recalled that he informed defendant that the blood kit was being requested and asked if defendant understood that fact. Although the blood kit does contain a preprinted consent form, the form was not read to defendant, nor did defendant sign the form. Defendant's wife offered to sign the consent form for defendant which she did. Sgt. Pierce did not recall defendant asking for her to sign, but only recalled defendant's wife indicating that she would sign the form.

At hearing, when asked on cross examination "...you did not ask him if he consented to a blood kit, you explained to him that a blood draw was being requested and you asked if he understood, correct?" Sgt. Pierce answered,

3

"Correct, sir." When then asked specifically if he asked defendant if he consented to the blood draw, Sgt. Pierce answered, "I don't recall. . . . Correct." Finally, Sgt. Pierce testified that he believed that he just requested or told defendant he needed to get a blood draw and he did not recall if Blodgett consented to the blood draw. The officer was not able to have his body camera on during his interaction with defendant due to hospital policy so there was no recording of the interactions prior to the blood draw.

When speaking with defendant about the blood draw, Sgt. Pierce did not have any information regarding the extent of defendant's injuries, any medical procedures or conditions that might have occurred prior to his arrival, or of what, if any, medication had been administered. Sgt. Pierce did not smell any odor of alcohol during his interactions with defendant. During the hearing, the officer described the room as very small, chaotic, and very emotional.

Registered nurse Taylor Rolfe was assigned to defendant's case upon his arrival at Redington-Fairview General Hospital on July 24, 2021. Although Nurse Rolfe conducted the blood draw, she did so only after Sgt. Pierce spoke with defendant. She did not obtain consent from defendant as, per her routine procedure, she relied on the investigating officer to ask appropriate questions to obtain an appropriate consent before proceeding to her portion of the kit collection. At the hearing, she did not recall the specifics of any conversation between Sgt. Pierce and defendant or how his wife came to sign the form. Once given the go ahead by Sgt. Pierce, Nurse Rolfe conducted the blood draw, gave the kit to Sgt. Pierce whereupon the two sealed the kit together. In addition to

4

caring for defendant, Nurse Rolfe was also responsible for a number of other patients during this timeframe as well.

The Law Court has held that for the results of a blood test to be admissible, the search in the form of a blood test must meet the Fourth Amendment's reasonable requirements. *See State v. Boyd*, 2017 ME 36, ¶ 8, 156 A.3d 748. "A search is reasonable if it is conducted pursuant to a legally obtained warrant or if an exception to the warrant requirement applies." *Id.* Further "a warrant is not required if a person voluntarily consents to the blood draw or if exigent circumstances exist." *Id. See also Birchfield v. North Dakota*, 579 U.S. 438, 136 S. Ct. 2160 (2016). "To demonstrate that the consent exception to a warrant requirement applies, however, the State must prove, 'by a preponderance of the evidence, that an objective manifestation of consent was given by word or gesture.'" *Id.* (*quoting State v Bailey*, 2012 ME 55, ¶ 16, 41 A.3d 535.). A showing of mere "acquiescence to a claim of legal authority" is insufficient. *See Bumper v. North Carolina*, 391 U.S. 543, 549 (1968); *see U.S. v. Weidul*, 325 F.3d 50, 53-54 (1st Cir. 2003) (applying a totality of the circumstances approach to determine whether consent is voluntary). However, consent "may be fairly inferred from context." *Birchfield v. North Dakota*, 579 U.S. 438, 467, 136 S. Ct. 2160, 2185 (2016).

As Sgt. Pierce acknowledged on the stand, he did not recall specifically asking defendant if he consented to the blood draw, or if he merely informed him that the State Police had requested that he provide a blood sample. The informed consent form was not read or presented to defendant but was signed

5

by Mrs. Blodgett who, for the purposes of this motion, did not have the authority to consent to the search on 's behalf. Nurse Rolfe did not recall consent being given by defendant. Merely informing defendant that a sample was being requested does not demonstrate that he consented to the blood draw. The court finds that defendant nodded in understanding when informed that the police were seeking a blood kit be completed.

There is insufficient evidence that the question (whether he consented or not) was ever asked of defendant. The State has not proven by a preponderance of evidence that defendant voluntarily consented by an objective manifestation given by either word or gesture.

The entry is:

> The Motion to Suppress is GRANTED. Defendant's blood samples and corresponding test results are SUPPRESSED.

Dated: August 5, 2022

Deborah P. Cashman
Justice, Maine Superior Court

6